IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KIRK WINWARD, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN TURLEY et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br> Case No. 2:08-CV-229 DB <br><br> District Judge Dee Benson |

Plaintiff, Kirk Winward, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915, *see* 28 U.S.C.A. § 1915 (West 2010), and his Amended Complaint was served upon Defendants by the United States Marshals Service. Defendants filed an Answer and a *Martinez* Report addressing Plaintiff's allegations. No additional discovery was conducted. Before the Court is Defendants' Motion for Summary Judgment based on the *Martinez* Report.

**ANALYSIS**

**I. Background**

Plaintiff's Amended Complaint alleges cruel and unusual punishment under the Eighth Amendment and denial of due process under the Fifth and Fourteenth Amendments based on withholding of certain medications by prison officials prior to Plaintiff's parole recision hearing. Plaintiff states that he has been diagnosed with numerous spinal conditions including disc-space

narrowing, degenerative disc disease and curvature of the upper cervical spine. Plaintiff further asserts that he has "neurological medical issues due to [his] injuries" and suffers from chronic neck and back pain and muscle spasms, for which he receives long-term pain medication. (Am. Compl. at 4.) Plaintiff alleges that several days before his parole recision hearing on January 23, 2007, Defendants withheld his medications, which not only aggravated Plaintiff's condition, but also prevented him from adequately representing himself at the parole hearing, causing his parole date to be rescinded. The Amended Complaint names Steven Turley, USP Warden, Tim Langley, Physician's Assistant, and five "John Does" as defendants in their individual and official capacities. Plaintiff seeks declaratory and injunctive relief, compensatory damages and punitive damages.

Defendants move for summary judgment on all claims, asserting there are no genuine issues of material fact and that the record is insufficient to support Plaintiff's claims as a matter of law. Regarding the Eighth Amendment claim, Defendants contend that the evidence shows Plaintiff's medication was never discontinued and that he has received adequate treatment for his medical needs. As to Plaintiff's due process claims, Defendants contend that Plaintiff has no liberty interest in parole which would give rise to a cognizable due process claim. Defendants further contend that even if Plaintiff can meet his evidentiary burden, Defendants are entitled to qualified immunity because Plaintiff cannot show that the rights at issue were clearly established when the alleged violations occurred.

## II. Facts[1]

1. On December 16, 1999, Plaintiff was convicted of Burglary of a Dwelling, Aggravated Assault, Assault by a Prisoner, and sentenced to serve two terms of 0-5 and one term of 1-15 years in prison.

2. Plaintiff's sentences terminate on September 14, 2015.

3. On or about January 19, 2006, Plaintiff received a rehearing before the Board of Pardons and Parole. ("Board"), wherein he was granted a parole date of December 19, 2006. (Dkt. no. 67, Ex. 1, *January 2006, Rehearing*.)

4. Between June and August of 2006, Plaintiff was found guilty of three major disciplinary infractions with the Utah State Prison. (Dkt. no. 67, Ex. 2, *Offender Discipline History*.)

5. On or about September 1, 2006, Plaintiff wrote to the Board indicating he wanted his sentence terminated rather than being paroled. (Dkt. no. 67, Ex. 3, *September 1, 2006 Letter from Winward to the Board*.)

6. The Board acknowledged Plaintiff's request for termination and suggested he discuss the request with this caseworker. (Dkt. no. 67, Ex. 4, *September 16, 2006, Letter from the Board to Winward.*)

7. On October 25, 2006, the Offender Management Review ("OMR") committee notified the Board that Plaintiff was again indicating that he wanted termination rather than

---

[1] The material facts presented here are drawn primarily from Defendant's Memorandum in Support of Motion for Summary Judgment (Dkt. no. 67). Except as specifically noted herein, these facts are not in dispute.

parole. (Dkt. no. 67, Ex. 5, *Lewis letter to the Board.*)

8. On November 7, 2006, the Board scheduled Plaintiff for a rescission hearing. (Dkt. no. 67, Ex. 6, *Special Attention Review.*)

9. On November 15, 2006, the Board received a report from the OMR staff recommending either termination or an expiration date, rather than parole, because Plaintiff indicted he was unable to abide by the conditions for parole. (Dkt. no. 67, Ex. 7, *Letter from Deputy Warden*.)

10. On December 5, 2006, the rescission hearing was held. The Board affirmed Plaintiff's parole date of December 19, 2006. (Dkt. no. 67, Ex. 9, *Rescission Hearing*.)

11. Due to Plaintiff's repeated requests for termination rather than parole and due to his disciplinary convictions in 2006, the Board held a "Special Attention Review" on December 14, 2006.

12. Following the Special Attention Review, Plaintiff's December 19, 2006, parole date was rescinded. (Dkt. no. 67, Ex. 10, *Special Attention Review*.)

13. On January 23, 2007, a rescission hearing was held.

14. On February 6, 2007, the Board affirmed the rescission of Plaintiff's December 19, 2006, parole date and scheduled Plaintiff for another hearing on January 1, 2008, with an updated prison report due prior to the hearing.

15. The Board noted on the Rescission Hearing Notice that they "[would] consider an earlier parole date if Mr. Winward agree[d] to abide by parole conditions as ordered." (Dkt. no. 67, Ex. 12, *Rescission Hearing*.)

16. On February 9, 2007, Plaintiff wrote to the Board indicating he would abide by the conditions of parole. (Dkt. no. 67, Ex. 13, *Letter from Winward to BOP*.)

17. On March 6, 2007, Plaintiff was released from prison subject to specific conditions of parole. (Dkt. no. 67, Exhibit 14, *Special Attention Review.*)

18. On May 1, 2007, Plaintiff was arrested by the Ogden Police Department.

19. A Board Warrant was issued on May 3, 2007. Plaintiff was found to have violated the terms and conditions of his parole agreement by engaging in the following conduct: absconding from parole supervision on or about April 25, 2007; committed or been convicted of Criminal Trespass; possession of a Dangerous Weapon by a Restricted Person; Disorderly Conduct; possession of Cocaine; and possession of Methamphetamine; possession of Marijuana. (Dkt. no. 67, Ex. 15, *Kirk Winward Offender History.*)

20. On May 9, 2007, Plaintiff was transferred back to the Utah State Prison.

21. During his incarceration, Plaintiff has a documented history of chronic back pain. Plaintiff was prescribed and is receiving Neurontin (aka Gabapentin). (Defs.' *Martinez* Report (Dkt. no. 65), Ex. 3, *Declaration of Richard M. Garden, M.D.*.)

22. Defendant Garden reviewed Plaintiff's medical records beginning October 2005 and found that Plaintiff has consistently received his prescribed medications, including Gabapentin. (*Declaration of Richard Garden, M.D.* ¶ 8-9.)

23. Plaintiff's medical records show that Plaintiff's prescription for Gabapentin was renewed on November 29, 2006, December 9, 2006, December 29, 2006, January 8, 2007 and January 23, 2007. (*Id.* at ¶ 14.)

24. Plaintiff has continued, and is continuing to receive Gabapentin for his chronic back pain. (*Id.* at ¶ 19.)

### III. Summary Judgement Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Cellotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the

event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

## IV. Cruel and Unusual Punishment

### A. Legal Standard for Denial of Medical Care Claims

In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (quoting *Greg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909 (1976)). "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

7

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of mere negligence in diagnosing or treating a medical condition, *Estelle*, 429 U.S. at 105, or "inadvertent failure to provide adequate medical care," *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996), are insufficient to state a claim under the Eighth Amendment. "Delay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. The Tenth Circuit has held that the "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).

### B. Sufficiency of Plaintiff's Medical Evidence

Regarding the objective component of the Eighth Amendment standard, Plaintiff has not presented sufficient evidence to support his claim that he was denied necessary pain medication for any substantial period of time. According to Dr. Garden's Declaration and Plaintiff's medical records, Plaintiff's prescribed pain medication, Gabapentin, was never discontinued and Plaintiff was receiving his Gabapentin twice daily at all times relevant to this case. The medical records show that Plaintiff's prescriptions for Gabapentin lasted fifteen days each and were timely renewed throughout the time period at relevant here.

Plaintiff's only evidence supporting his contention that he was denied medication are his statements made at the Rescission Hearing. While Plaintiff did state during the rescission hearing that he had been without certain medication for several days and that he was experiencing withdrawal symptoms, he did not assert that the medication was discontinued by

8

medical staff, nor did he claim that it was intentionally withdrawn in order affect his performance at the hearing. In fact, Plaintiff told the hearing officer, "I'm feeling a lot better now that I've started to come off [the medication]." (Dkt. No. 67, Ex. 11 at 8.) It was only after Plaintiff received notice of the negative outcome of the hearing that Plaintiff claimed his medications had been wrongfully withheld. Thus, Plaintiff has not presented sufficient evidence to create a genuine issue of fact as to whether his medication was intentionally withheld, nor has he shown that he suffered any substantial harm from being denied medication.

Turning to the subjective prong of the Eighth Amendment standard, Plaintiff has not presented sufficient evidence to show that Defendants were deliberately indifferent to Plaintiff's medical needs. Although Plaintiff alleges that Defendants discontinued his medication "as punishment," and in an attempt to interfere with his parole hearing, Plaintiff has not offered any evidence to support these assertions. Plaintiff has never explained the specific circumstances surrounding the alleged discontinuance of his medication. Instead, Plaintiff merely conjectures that the discontinuance was nefarious based simply on its timing and the outcome of the rescission hearing. Contrary to Plaintiff's theory, however, there is no evidence that Defendants withheld medication in order to prevent Plaintiff from being released. In fact, in its Rescission Report to the Board, signed November 15, 2006, the OMR committee stated that although--based on Plaintiff's own statements--the committee did not believe Plaintiff would abide by the standard parole conditions, it was not opposed to Plaintiff's sentence being terminated. (Dkt. no. 67, Ex. 5 at 2.)

Thus, the Court concludes that Plaintiff has not satisfied his burden of presenting

admissible evidence showing that Defendants were deliberately indifferent to Plaintiff's medical needs. Defendants are, therefore, entitled to summary judgment on Plaintiff medical care claims.

## V. Due Process

Plaintiff's Amended Complaint alleges denial of due process under the Fifth and Fourteenth Amendments based on Defendants' purported interference with Plaintiff's parole proceedings. Plaintiff makes two primary allegations in support of his due process claim: First, that Defendants abruptly discontinued Plaintiff's medication shortly before the Rescission Hearing, intending to interfere with Plaintiff's ability to plead his case; and, second, that Defendants presented false information about Plaintiff's disciplinary history to the Board.

### A. Legal Standard for Due Process in Parole Proceedings

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Thus, the first step in evaluating any due process claim is to determine whether the plaintiff's allegations implicate liberty or property interests protected under the U.S. Constitution. The Supreme Court has recognized that in the prison context "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483, 115 S. Ct. 2293, 2300 (1995). In *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100 (1979), the United States Supreme Court held the Fourteenth Amendment due process clause does not apply to discretionary parole release determinations unless state law makes parole release more than a possibility. 442 U.S. at 7-8, 99 S. Ct. at 2103-04. Similarly, the Supreme Court held that prerelease rescission of a state parole grant requires no

due process hearing unless state law expressly creates a protected "liberty interest." *Jago v. Van Curen*, 454 U.S. 14, 102 S. Ct. 31 (1981).

The Utah Supreme Court has determined that Utah law creates a cognizable "liberty interest" worthy of due process protections only at "parole hearings at which an inmate's release date is fixed or extended." *Neel v. Holden*, 886 P.2d 1097, 1101 (Utah 1994).

> After a prisoner's liberty interest has been diminished to an expectation of release on a certain date, that interest revives either upon completion of the term fixed or upon a grant of parole before that fixed date. Once paroled, offenders have a liberty interest that is limited by the restrictions that govern parole; it is nevertheless a liberty interest which is entitled to due process protection . . . . If an offender's parole is revoked, the offender's liberty interest persists until the Board establishes a new release date at a hearing that follows the parole revocation hearing.

*Neel*, 886 P.2d at 1101 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82, 93 S. Ct. 1756, 1759 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 481-82, 92 S. Ct. 2593, 2600 (1972)).

Recognizing the liberty interest created under Utah law by an expectation of release on a certain date, the Tenth Circuit has held that an inmate is entitled to a limited hearing prior to parole rescission. *See Robinson v. Benson*, 570 F.2d 920 (1978). However, the Court has also distinguished the limited interest implicated in a parole rescission hearing from the heightened interest at stake in parole revocation proceedings. Although a hearing is required in both instances, a parole rescission hearing is more limited in nature. Thus, the Tenth Circuit has held that inmates facing parole rescission are only "entitled to minimum due process procedures." *Robinson*, 570 F.2d at 922.

## B. Sufficiency of Process Afforded Plaintiff

There is no question that Plaintiff was afforded minimal due process protections with regard to his parole rescission. The record clearly shows that Plaintiff received advance notice of the rescission hearing, that he was afforded ample opportunity to make statements and answer questions at the hearing, and that he was provided a timely written notice of the outcome. Moreover, Plaintiff has not supported his allegations that he was denied necessary medication prior to the hearing or that the Board relied on false information to reach its decision.

As previously discussed, the evidence does not support Plaintiff's allegation that he was intentionally denied medication in order to negatively affect his performance at the rescission hearing. Nor is there any evidence that Plaintiff's performance at hearing caused his parole date to be rescinded. In fact, the record shows that Plaintiff thoroughly and coherently answered the questions put to him at the hearing and that he zealously advocated his position. Plaintiff clearly explained that he preferred to have his sentence terminated, rather than be released on parole, because he did not feel he could comply with the standard parole conditions regarding alcohol use. The record also shows that the hearing officer thoroughly discussed the matter with Plaintiff to ensure that he fully understood Plaintiff's position. Finally, the report of the hearing clearly states that the Board's decision to rescind Plaintiff's parole date was based on Plaintiff's concerns about the parole conditions and that the Board would reconsider an earlier parole date if Plaintiff unambiguously agreed to abide by all parole conditions. Importantly, once Plaintiff abandoned his position regarding alcohol use and agreed to abide by all parole conditions he was promptly granted a Special Attention Review and was paroled less than one month later.

Plaintiff's allegations concerning admission of false evidence regarding Plaintiff's disciplinary history are similarly flawed. Not only has Plaintiff failed to present evidence showing that the disciplinary history provided to the Board was inaccurate, there is no evidence that the disciplinary infractions caused the delay in Plaintiff's parole. As already mentioned, the sole reason for the rescission was Plaintiff's stated intention to continue using alcohol while on parole, not his recent disciplinary history. In fact, the hearing officer discussed with Plaintiff the circumstances surrounding the disciplinary charges and apparently concluded that they were not sufficient basis for denying Plaintiff parole.

Thus, the Court concludes that Plaintiff has not presented sufficient evidence to show a denial of due process and Defendants are entitled to summary judgment on this claim.

## VI. Qualified Immunity

Because Plaintiff has not shown that Defendants actions violated Plaintiff's rights under the United States Constitution, the Court need not address whether Defendants are entitled to qualified immunity.

**ORDER**

Based on the forgoing analysis, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Doc. no. 66) is **GRANTED**; and,

(2) this case is **CLOSED**.

DATED this 7th day of February, 2011.

BY THE COURT:

*[signature: Dee Benson]*
_____
DEE BENSON
United States District Judge